**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BLUEFIN BIOMEDICINE IP, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>NUVALENT, INC., GSK PLC, and GLAXOSMITHKLINE LLC,<br><br>*Defendants.* | **Case No. 1:26-cv-15238**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bluefin Biomedicine IP, LLC ("Plaintiff" or "Bluefin"), by and through its attorneys, brings this action for patent infringement against Defendants Nuvalent, Inc. ("Nuvalent"), GSK plc, and GlaxoSmithKline LLC ("GSK LLC") (collectively, "GSK"), (GSK collectively with Nuvalent, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. Bluefin brings this action to halt Defendants' infringement of United States Patent Nos. 8,481,279 ("the '279 patent") and 9,523,130 ("the '130 patent") (collectively, "the Asserted Patents") and to seek damages for Defendants' past, ongoing, and future acts of infringement. The Asserted Patents are attached hereto as Exhibits 1 and 2, respectively.

2. The Asserted Patents claim methods for treating patients having non-small cell lung carcinoma ("NSCLC") that expresses a particular protein called human Echinoderm Microtubule-Associated Protein-Like 4 (EML4)-Anaplastic Lymphoma Kinase (ALK) ("EML4-ALK") fusion polypeptide. The claimed methods relate to administering a small molecule that directly inhibits the kinase activity of the EML4-ALK fusion polypeptide.

3. This action arises out of Defendants' unauthorized promotion, marketing, and sale of the molecule neladalkib, which Defendants market as the drug product Nelkarmi, for use in certain patients with NSCLC expressing EML4-ALK fusions. Based on publicly available information regarding neladalkib's direct binding to and inhibition of the ALK kinase domain in EML4-ALK fusion-expressing tumor cells, the use of neladalkib in EML4-ALK-positive NSCLC patients practices methods claimed in the Asserted Patents.

4. Nelkarmi received accelerated approval from the Food and Drug Administration ("FDA") on November 17, 2026. Ex. 3; Ex. 4. Defendants stand to gain enormous commercial benefits by using or inducing others to use Bluefin's patented inventions through the sale, marketing, and promotion of Nelkarmi, including through the FDA-approved label and other affirmative statements directing and encouraging the use of neladalkib in an infringing manner. Defendants have described Nelkarmi as having "multi-blockbuster potential." The extraordinary commercial value attributed to Nelkarmi is confirmed by GSK's July 2026 acquisition of Nuvalent—including neladalkib and two other cancer therapies developed by Nuvalent—for approximately $10.6 billion. *See* Ex. 5 at 1; Ex. 6 at 1. On information and belief, this value was driven in substantial part by anticipated revenues from neladalkib.

5. Defendants have infringed and continue to infringe the Asserted Patents without authorization from Bluefin. Bluefin seeks compensation for Defendants' unauthorized and willful infringement of the groundbreaking inventions claimed in the Asserted Patents.

## THE PARTIES

6. Plaintiff Bluefin Biomedicine IP, LLC is a Delaware limited liability company with its principal place of business at 32 Tozer Road, Beverly, MA 01915. Bluefin is the assignee and owner of all rights, title, and interest in and to the Asserted Patents, including the right to pursue damages, injunctive relief, and other remedies for past, current, and future infringement and to collect royalties or other payments pertaining thereto. Ex. 7.

7. Defendant Nuvalent is a Delaware corporation with its principal place of business at One Broadway, 14th Floor, Cambridge, MA 02142. Nuvalent developed neladalkib, the active ingredient in Nelkarmi, and submitted the New Drug Application (NDA) seeking FDA approval for neladalkib in April 2026. *See* Ex. 13 at 3; Ex. 16 at 1. Nuvalent is the NDA holder for Nelkarmi. In June 2026, Nuvalent entered an agreement with GSK whereby GSK would acquire Nuvalent and its assets, including neladalkib, for $10.6 billion. Ex. 6 at 1; Ex. 14 at 2. The acquisition was completed on July 15, 2026. Ex. 5 at 1. On information and belief, the transaction was driven in significant part by the anticipated commercial value of neladalkib, which GSK has described as having "multi-blockbuster potential" (*id.*; Ex. 6 at 1). On information and belief, following completion of the acquisition, Nuvalent operates as a direct, wholly owned subsidiary of GSK LLC. Ex. 8 at 2.

8. Defendant GSK LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 2929 Walnut Street, Ste. 1700, Philadelphia, Pennsylvania 19104. On information and belief, GSK LLC is Nuvalent's direct parent company. Ex. 8 at 2.

9. Defendant GSK plc is a corporation organized under the laws of England and Wales, with its registered office at 79 New Oxford Street, London, United Kingdom, WC1A 1DG. On information and belief, GSK plc is a global pharmaceutical company that completed its

acquisition of Nuvalent in July 2026 for approximately $10.6 billion. On information and belief, GSK plc is the ultimate parent company of both GSK LLC and Nuvalent. Ex. 8 at 2.

10. On information and belief, GSK LLC and GSK plc direct and control Nuvalent's operations, including the marketing, sale, offer for sale, and promotion of Nelkarmi in the United States. On information and belief, GSK is responsible for supporting the commercialization of Nelkarmi in the United States and benefits from the commercialization thereof. In announcing its agreement to acquire Nuvalent, GSK plc described neladalkib as having "multi-blockbuster potential." Ex. 6 at 1; *see* Ex. 5 at 1. The announcement quoted Nuvalent's Chief Executive Officer as stating that "GSK's proven track record, infrastructure, and expertise will support the successful commercialisation [sic] of . . . neladalkib." Ex. 6 at 2. GSK plc has since reported investing in research and development work on neladalkib following the acquisition, consistent with its announced role in supporting neladalkib's development and commercialization. *See* Ex. 15 at 6. Upon FDA approval of Nelkarmi, GSK plc issued a press release announcing the approval, in which GSK's Chief Scientific Officer stated, "we are pleased to bring this innovation to patients in the US." Ex. 4 at 1.

## JURISDICTION AND VENUE

11. This is a civil action for patent infringement arising under the United States patent laws, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271 and 281.

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has personal jurisdiction over Nuvalent because Nuvalent maintains its principal place of business within this District and has committed acts of infringement within this District giving rise to this action. On information and belief, Nuvalent sells and/or offers for sale, markets, and promotes Nelkarmi throughout the United States, including in Massachusetts. The

FDA-approved label for Nelkarmi notes that it is distributed by "Nuvalent, Inc., Cambridge, MA 02142." Ex. 9 at 16.

14. This Court has personal jurisdiction over GSK LLC because, on information and belief, GSK LLC has committed acts of infringement within this District giving rise to this action by directing and controlling the infringing activities of Nuvalent within this District. On information and belief, GSK LLC, directly and through Nuvalent, sells and/or offers for sale Nelkarmi and markets and promotes it for an infringing use throughout the United States, including in Massachusetts. On information and belief, GSK LLC also has engaged in continuous and systematic activity within this District, including sales and promotion of other drug products and work with healthcare providers in Massachusetts, and has extensive contacts within the District that relate to this suit. On information and belief, GSK LLC uses its commercial "infrastructure," including marketing people in Massachusetts, to support the marketing and promotion of Nelkarmi in Massachusetts. *See* Ex. 6 at 2.

15. This Court has personal jurisdiction over GSK plc because, on information and belief, GSK plc has committed acts of infringement within this District giving rise to this action by directing and controlling the infringing activities of its subsidiary Nuvalent within this District. On information and belief, GSK plc, directly and through Nuvalent, sells and/or offers for sale Nelkarmi and markets and promotes it for an infringing use throughout the United States, including in Massachusetts. On information and belief, GSK plc also has engaged in continuous and systematic activity within this District, including sales and promotion of other drug products and work with healthcare providers in Massachusetts, and has extensive contacts within the District that relate to this suit. On information and belief, GSK plc uses its commercial "infrastructure,"

including marketing people in Massachusetts, to support the marketing and promotion of Nelkarmi in Massachusetts. *See* Ex. 6 at 2.

16. Venue is proper in this Judicial District under 28 U.S.C. § 1400(b). On information and belief, Nuvalent has a regular and established place of business in this District and has committed acts of infringement within the District. On information and belief, GSK LLC has committed acts of infringement in this District, including through its direction and control of Nuvalent's marketing, sale, offer for sale, and/or promotion of neladalkib within this District, and has regular and established places of business at 301 Binney St, Cambridge, MA 02142; 200 Cambridge Park Dr, Cambridge, MA 02140; and 300 Technology Square, Cambridge, MA 02139. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because GSK plc is a foreign company that may be sued in any Judicial District, including the District of Massachusetts.

## BACKGROUND

### Bluefin Biomedicine IP, LLC

17. Bluefin grew out of the pioneering research and technology developed at Cell Signaling Technology, Inc. ("CST"). CST developed innovative proteomics technologies to study the molecular pathways driving cancer, which led to important discoveries concerning the molecular biology of lung cancer. Building on CST's scientific expertise in proteomics, antigen discovery, antibody technology, and cancer biology, CST founded Bluefin in 2015 as a therapeutic spinout focused on translating those capabilities into novel medicines for patients with cancer and other serious diseases.

18. Since its founding in 2015, Bluefin has been an innovator in the clinical-stage biotechnology industry, focusing on developing first-in-class antibody-based medicines for the treatment of serious inflammatory and oncologic diseases. Bluefin's mission is to develop

innovative therapies that improve the quality of life and long-term outcomes for patients with cancer and immune-mediated inflammatory diseases for which existing therapies remain inadequate.

19. Bluefin's approach to drug discovery begins with the biology of human disease. Recognizing that cancer and immune-mediated inflammatory diseases arise from complex interactions among target cells, immune pathways, and tissue microenvironments, Bluefin seeks to understand when, where, and how potential therapeutic targets are expressed in human tissues. Its integrated discovery platform combines proprietary, proteomics-driven antigen discovery with transcriptomic and bioinformatic analyses and next-generation antibody engineering to map target expression within complex human tissues.

20. By anchoring its research directly in human tissue, Bluefin seeks to uncover disease biology that may be inaccessible through conventional approaches and to identify differentiated therapeutic targets across immune pathways and tumor-intrinsic and tumor-associated mechanisms. Bluefin uses those insights to advance a focused portfolio of differentiated biologics designed to address serious diseases with significant unmet medical needs.

21. Bluefin's commitment to developing targeted therapies grounded in the molecular biology of human disease is reflected in its intellectual-property portfolio, which includes the Asserted Patents. The Asserted Patents arose from pioneering research by scientists at CST concerning a previously unknown genetic alteration in certain forms of lung cancer and methods of treating patients whose cancers harbor that alteration.

22. At the time of the inventions, researchers had made significant advances in understanding the molecular mechanisms underlying cancer, but important questions remained concerning the genetic alterations responsible for NSCLC. Although certain genetic mutations

and signaling pathways had been implicated in NSCLC, there remained a need to identify molecular drivers of the disease to develop new methods of treating patients with targeted therapies.

23. The inventors of the Asserted Patents investigated the molecular mechanisms underlying NSCLC. Their work led to the discovery of a previously unknown genetic alteration involving a fusion between portions of the echinoderm microtubule-associated protein-like 4 ("EML4") gene and the ALK gene. The resulting EML4-ALK fusion protein retained the kinase domain of ALK and exhibited aberrant kinase activity. The inventors further identified multiple variants of the EML4-ALK fusion and demonstrated the presence of EML4-ALK fusions in human NSCLC samples. The identification of EML4-ALK provides a molecular marker for a subset of NSCLC patients whose cancers are associated with aberrant ALK activity. By determining whether a patient's cancer contains an EML4-ALK fusion, physicians can identify patients for whom targeted treatment with a compound that inhibits ALK kinase activity is appropriate. This provides a means of connecting the molecular characteristics of an individual patient's tumor with a targeted therapeutic approach.

24. With this discovery, the inventors developed methods for detecting EML4-ALK fusions and using the presence of those fusions in the treatment of lung cancer. The Asserted Patents describe, among other things, methods of treating cancers involving EML4-ALK fusion proteins using compounds that inhibit ALK kinase activity. These innovations resulted in the inventions claimed in the Asserted Patents, which CST has assigned to Bluefin (Ex. 7).

**The Asserted Patents**

25. The ’279 patent, issued on July 9, 2013, is entitled “Methods of Treating Lung Cancer Using Inhibitors Anaplastic Lymphoma Kinase.” The ’279 patent lists Klarisa Rikova, Herbert Haack, Laura Sullivan, Ailan Guo, Anthony Possemato, Joan MacNeill, Ting-Lei Gu, and Jian Yu as named inventors. Bluefin is the assignee and owner of all rights, title, and interest in and to the ’279 patent, including the right to pursue damages, injunctive relief, and other remedies for past, current, and future infringement and to collect royalties or other payments pertaining thereto. Ex. 7. A true and correct copy of the ’279 patent is attached hereto as Exhibit 1.

26. The ’130 patent, issued on December 20, 2016, is entitled “Methods of Treating Non-Small Cell Lung Carcinoma (NSCLC).” The ’130 patent lists Klarisa Rikova, Herbert Haack, Laura Sullivan, Ailan Guo, Anthony Possemato, Joan MacNeill, Ting-Lei Gu, and Jian Yu as named inventors. Bluefin is the assignee and owner of all rights, title, and interest in and to the ’130 patent, including the right to pursue damages, injunctive relief, and other remedies for past, current, and future infringement and to collect royalties or other payments pertaining thereto. Ex. 7. A true and correct copy of the ’130 patent is attached hereto as Exhibit 2.

27. As described above, the inventions of the Asserted Patents are directed to methods for treating a human subject having NSCLC that expresses a human EML4-ALK fusion polypeptide, generally comprising administering to the human subject a small molecule that (a) binds to the ATP-binding cleft and (b) directly inhibits the kinase activity of the EML4-ALK fusion polypeptide.

**Defendants’ Infringement**

28. On information and belief, Nuvalent developed neladalkib to target NSCLC with ALK rearrangements leading to ALK fusions, including EML4-ALK. *See* Ex. 17 at 31, 33, 35. On information and belief, Nuvalent used EML4-ALK experimental models to develop neladalkib

and described EML4-ALK as the "most common fusion partner" in the targeted disease state for neladalkib. Ex. 18 at 25. On information and belief, neladalkib is designed to bind to and inhibit the ALK kinase domain, including in EML4-ALK fusion-expressing tumor cells, thereby inhibiting the progression of EML4-ALK-positive NSCLC.

29. On information and belief, Defendants knew and know that the targeted indication for neladalkib will encourage use of the method claimed in the Asserted Patents. The targeted and approved indication for neladalkib is the treatment of certain patients with ALK-positive NSCLC. Ex. 9 at 1. The majority of uses for that patient population will practice the claimed methods; as one article "solely funded by Nuvalent" (Ex. 19 at 18) states: "EML4 accounts for 84% of ALK fusions in NSCLC" (*id.* at 3). On information and belief, promoting the use of neladalkib for the indication sought and obtained by Defendants actively encourages the use of the methods claimed in the Asserted Patents. On information and belief, Defendants know that the approved indication will practice the methods claimed in the Asserted Patents and market Nelkarmi with the specific intent of encouraging practice of those methods.

30. Moreover, on information and belief, the approved label for Nelkarmi notes the mechanism of the molecule inhibits cells "expressing ALK alterations, including ALK fusions," the majority of which, Nuvalent has acknowledged, are EML4 fusions. On information and belief, the approved label for Nelkarmi also describes clinical studies in patients with a G1202R mutation, which is highly correlated with the EML4 fusion. On information and belief, this label and promotion or marketing based on this label will actively encourage physicians and healthcare providers to practice the method of treating patients with NSCLC that expresses EML4 claimed in the Asserted Patents.

31. On information and belief, Defendants promote and commercialize neladalkib, known as Nelkarmi, a next-generation, highly selective ALK tyrosine kinase inhibitor, for the treatment of patients with NSCLC harboring ALK rearrangements, including EML4-ALK fusions.

32. GSK has described Nelkarmi as a "potential best-in-class, next-generation . . . ALK inhibitor[] for treatment of NSCLC" with "multi-blockbuster" revenue potential (Ex. 6 at 1; *see* Ex. 5 at 1), and, on information and belief, its anticipated commercial value was a significant driver of GSK's approximately $10.6 billion 2026 acquisition of Nuvalent. On information and belief, those descriptions are based on differentiating—through marketing and promotion—Nelkarmi from other treatments based on the treatment of patients with ALK fusions, chief among them EML4. Ex. 17 at 31-41, Ex. 18 at 25, 29-32. On information and belief, that marketing and promotion is specifically intended to actively encourage physicians and healthcare providers to practice the methods claimed in the Asserted Patents.

33. Defendants have actual knowledge of Plaintiff's Asserted Patents and have known of their infringement of the Asserted Patents well before the filing of this Complaint. Specifically, Nuvalent has been aware of the Asserted Patents since at least June 9, 2026. On information and belief, Defendants knew that the proposed indication for neladalkib directs healthcare providers to use neladalkib in a manner that practices the methods claimed in the Asserted Patents, and that their marketing, promotion, and distribution of neladalkib in accordance with the FDA-approved label would induce infringement of the Asserted Patents.

34. On June 9, 2026, Bluefin sent Nuvalent a letter notifying Nuvalent of the Asserted Patents and explaining that the clinical use of neladalkib in EML4-ALK-positive NSCLC patients practices methods claimed in the Asserted Patents. A true and correct copy of that letter is attached hereto as Exhibit 10. Nuvalent did not respond.

35. On June 24, 2026, Bluefin sent Nuvalent a second letter referencing and reiterating its June 9 correspondence. A true and correct copy of that letter is attached hereto as Exhibit 11. Nuvalent did not respond.

36. On July 20, 2026, Bluefin sent GSK plc a notice letter referencing its two prior letters directed to Nuvalent and restating that the clinical use of neladalkib in EML4-ALK-positive NSCLC patients practices methods claimed in the Asserted Patents. A true and correct copy of that letter is attached hereto as Exhibit 12. Despite GSK's confirming receipt of the letter and engaging in discussions with Bluefin's counsel regarding Bluefin's Asserted Patents and Defendants' infringing acts, Defendants have proceeded to infringe the Asserted Patents through their sale, marketing, and promotion of neladalkib for use in the infringing methods.

37. Defendants have not obtained a license or otherwise acquired rights from Bluefin to practice the Asserted Patents.

38. Defendants have continued their infringing activities notwithstanding receipt of these notices and their awareness of the Asserted Patents. Defendants' infringement of the Asserted Patents willfully disregards Bluefin's patent rights.

**COUNT I**
**(Infringement of U.S. Patent No. 8,481,279)**

39. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 38 as though fully set forth herein.

40. On information and belief, following FDA approval, Defendants are currently manufacturing, marketing, selling, offering to sell, and/or promoting neladalkib in the United States for the treatment of patients who have NSCLC harboring ALK rearrangements, including EML4-ALK fusions.

41. On information and belief, Defendants' promotion and sale of Nelkarmi in the United States induce use of Nelkarmi that satisfies each element of the '279 patent and infringes, either literally or under the doctrine of equivalents, one or more claims of the '279 patent.

42. On information and belief, neladalkib is a small molecule that (a) binds to the ATP-binding cleft and (b) directly inhibits the ALK kinase domain, including in EML4-ALK fusion-expressing tumor cells, thereby inhibiting the progression of EML4-ALK-positive NSCLC. On information and belief, the FDA-approved label for Nelkarmi encourages physicians and healthcare providers to administer Nelkarmi to human subjects having ALK-positive NSCLC, including patients whose tumors express EML4-ALK fusion polypeptides, in an amount effective to treat the NSCLC.

43. On information and belief, the EML4-ALK fusion polypeptide expressed in the NSCLC tumors of patients treated with neladalkib comprises an amino acid sequence at least 95% identical to an amino acid sequence comprising amino acid residues 1-222 of SEQ ID NO: 3 and amino acid residues 1116-1383 of SEQ ID NO: 5 of the Asserted Patents, and/or at least 95% identical to the amino acid sequence of SEQ ID NO: 1 or SEQ ID NO: 18 of the Asserted Patents.

44. Defendants are actively inducing others to infringe one or more claims of the '279 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the '279 patent since at least June 9, 2026, and have known that the use of neladalkib in accordance with its proposed label constitutes infringement of the '279 patent. Despite this knowledge, Defendants have actively and knowingly induced healthcare providers and patients to directly infringe one or more claims of the '279 patent by, among other things: (a) marketing Nelkarmi with labeling that directs and encourages use of neladalkib in patients with ALK-positive NSCLC, including NSCLC harboring EML4-ALK fusions, in a

manner that satisfies each element of one or more claims of the ’279 patent; (b) marketing, promoting, and distributing neladalkib in the United States with instructions, promotional materials, and other information that encourages healthcare providers to prescribe and patients to use neladalkib in an infringing manner; (c) conducting and publishing clinical trials demonstrating the use of neladalkib in patients with ALK-positive NSCLC, including patients whose tumors harbor EML4-ALK fusions, thereby providing healthcare providers with the knowledge and motivation to prescribe neladalkib in an infringing manner; and (d) making, offering to sell, selling, and importing neladalkib in the United States with the specific intent to encourage direct infringement of the ’279 patent.

45. On information and belief, the FDA-approved label for neladalkib specifically directs healthcare providers to administer neladalkib to patients with NSCLC harboring ALK rearrangements, a large majority of which include EML4-ALK fusions. The label provides dosing instructions (Ex. 9, §§ 2-3), patient selection criteria (*id.*, §§ 1, 8), and clinical data (*id.*, §§ 6, 12, 14) that, when followed, result in the practice of one or more claims of the ’279 patent. Defendants’ dissemination of this label, together with their promotional activities directed to healthcare providers, constitutes specific intent to induce infringement of the ’279 patent. On information and belief, Defendants have not taken any meaningful steps to avoid inducing infringement of the ’279 patent, such as by modifying the label or promotional materials to exclude uses that practice the claims of the ’279 patent.

46. Defendants have been and are continuing to contribute to the infringement of one or more claims of the ’279 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing neladalkib for use by patients and/or healthcare providers in an infringing manner in violation of 35 U.S.C. § 271(c).

On information and belief, neladalkib is not a staple article or commodity of commerce suitable for substantial non-infringing use.

47. Defendants' infringement of the '279 patent has been and continues to be willful. As alleged above, Defendants received actual notice of the '279 patent and their infringement thereof no later than June 9, 2026, yet have continued their infringing activities.

48. As a result of Defendants' infringement of the '279 patent, Bluefin has suffered damages and will continue to suffer damages. Bluefin is entitled to recover damages pursuant to 35 U.S.C. § 284.

49. This case is exceptional, and Bluefin is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**COUNT II**
**(Infringement of U.S. Patent No. 9,523,130)**

50. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 49 as though fully set forth herein.

51. On information and belief, following FDA approval, Defendants are currently manufacturing, marketing, selling, offering to sell, and/or promoting neladalkib in the United States for the treatment of patients who have NSCLC harboring ALK rearrangements, including EML4-ALK fusions.

52. On information and belief, Defendants' promotion and sale of Nelkarmi in the United States induce use of Nelkarmi that satisfies each element of the '130 patent and infringes, either literally or under the doctrine of equivalents, one or more claims of the '130 patent.

53. On information and belief, neladalkib is a small molecule that (a) binds to the ATP-binding cleft and (b) directly inhibits the ALK kinase domain, including in EML4-ALK fusion-expressing tumor cells, thereby inhibiting the progression of EML4-ALK-positive NSCLC. On

information and belief, the FDA-approved label for Nelkarmi encourages physicians and healthcare providers to administer Nelkarmi to human subjects having ALK-positive NSCLC, including patients whose tumors express EML4-ALK fusion polypeptides, in an amount effective to treat the NSCLC.

54. On information and belief, the EML4-ALK fusion polypeptide expressed in the NSCLC tumors of patients treated with neladalkib comprises an amino acid sequence at least 95% identical to an amino acid sequence comprising EML4 amino acid residues 1-222 of SEQ ID NO: 3 and ALK amino acid residues 1116-1383 of SEQ ID NO: 5 of the Asserted Patents.

55. On information and belief, the EML4 amino acid residues are amino-terminal to the ALK amino acid residues in the EML4-ALK fusion polypeptide expressed in the NSCLC tumors of patients treated with neladalkib.

56. On information and belief, Defendants are actively inducing others to infringe one or more claims of the ’130 patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the ’130 patent since at least June 9, 2026, and have known that the use of neladalkib in accordance with its proposed label constitutes infringement of the ’130 patent. Despite this knowledge, Defendants have actively and knowingly induced healthcare providers and patients to directly infringe one or more claims of the ’130 patent by, among other things: (a) marketing Nelkarmi with labeling that directs and encourages use of neladalkib in patients with ALK-positive NSCLC, including NSCLC harboring EML4-ALK fusions, in a manner that satisfies each element of one or more claims of the ’130 patent; (b) marketing, promoting, and distributing neladalkib in the United States with instructions, promotional materials, and other information that encourages healthcare providers to prescribe and patients to use neladalkib in an infringing manner; (c) conducting and publishing clinical trials

demonstrating the use of neladalkib in patients with ALK-positive NSCLC, including patients whose tumors harbor EML4-ALK fusions, thereby providing healthcare providers with the knowledge and motivation to prescribe neladalkib in an infringing manner; and (d) making, offering to sell, selling, and importing neladalkib in the United States with the specific intent to encourage direct infringement of the '130 patent.

57. The FDA-approved label for neladalkib specifically directs healthcare providers to administer neladalkib to patients with NSCLC harboring ALK rearrangements, including EML4-ALK fusions. The label provides dosing instructions (Ex. 9, §§ 2-3), patient selection criteria (*id.*, §§ 1, 8), and clinical data (*id.*, §§ 6, 12, 14) that, when followed, result in the practice of one or more claims of the '130 patent. Defendants' dissemination of this label, together with their promotional activities directed to healthcare providers, constitutes specific intent to induce infringement of the '130 patent. On information and belief, Defendants have not taken any meaningful steps to avoid inducing infringement of the '130 patent, such as by modifying the label or promotional materials to exclude uses that practice the claims of the '130 patent.

58. On information and belief, Defendants have been and are continuing to contribute to the infringement of one or more claims of the '130 patent in this District and elsewhere in the United States by making, offering to sell, selling, importing, and otherwise promoting and distributing neladalkib for use by patients and/or healthcare providers in an infringing manner in violation of 35 U.S.C. § 271(c). On information and belief, neladalkib is not a staple article or commodity of commerce suitable for substantial non-infringing use.

59. Defendants' infringement of the '130 patent has been and continues to be willful. As alleged above, Defendants received actual notice of the '130 patent and their infringement thereof no later than June 9, 2026, yet have continued their infringing activities.

60. As a result of Defendants' infringement of the '130 patent, Bluefin has suffered damages and will continue to suffer damages. Bluefin is entitled to recover damages pursuant to 35 U.S.C. § 284.

61. This case is exceptional, and Bluefin is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment in its favor and against Defendants, as follows:

A. A judgment that Defendants have infringed and continue to infringe one or more claims of the Asserted Patents;

B. An award of damages adequate to compensate Plaintiff for Defendants' past, continuing, and any future infringement of the Asserted Patents for all infringing products, in no event less than a compulsory, ongoing reasonable royalty, in an amount according to proof and accounting for sales;

C. A judgment that Defendants are liable for willful infringement;

D. An award of trebled damages pursuant to 35 U.S.C. § 284;

E. Pre-judgment and post-judgment interest on Plaintiff's award, in an amount according to proof;

F. A judgment declaring this to be an exceptional case, and an award to Plaintiff of its attorneys' fees, costs, and expenses incurred in this action pursuant to 35 U.S.C. § 285; and

G. Such other and further relief as the Court deems just and equitable.

Dated: November 24, 2026

Respectfully submitted,

_/s/ Elaine Herrmann Blais_
Elaine Herrmann Blais (BBO# 656142)
Alexandra Lu (BBO# 691114)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
EBlais@goodwinlaw.com
ALu@goodwinlaw.com

*Attorneys for Plaintiff*